UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CRIMINAL NO 21-133 (DWF/DTS)

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **DEFENDANT'S POSITION ON** |
| | ) | **SENTENCING FACTORS AND** |
| **NATHAN MILLER DOBBELMANN** | ) | **MOTION FOR DOWNWARD** |
| | ) | **VARIANCE** |
| **Defendant** | ) | |

## INTRODUCTION

Defendant Nathan Miller Dobbelmann, through his undersigned attorney, submits this Position on Sentencing Factors and Motion for Downward Variance. Mr. Dobbelmann respectfully requests that the Court impose the 15-year mandatory minimum sentence. As demonstrated below, this sentence provides a severe and sufficient punishment and avoids the excessive punishment that the child pornography guidelines impose on all defendants, regardless of their culpability.

## POSITION ON SENTENCING FACTORS

The sentencing analysis begins with consideration of the applicable sentencing guideline provisions. *Gall v. United States*, 552 U.S. 38, 49 (2007). "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Id*. In doing this, a sentencing court must keep in mind that "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable."

*Nelson v. United States*, 555 U.S. 350, 352 (2009) (emphasis in the original.) Moreover, a sentencing court need not follow the sentencing range suggested by the Guidelines if it disagrees with a relevant policy reflected in the Guidelines. See *Spears v. United States*, 555 U.S. 261, 264, (2009).

**A.**   **The Guidelines Range in the Plea Agreement and Presentence Report**.

The Presentence Report ("PSR") and plea agreement calculate the applicable advisory guidelines range at between 324 to 360 months. *See PSR ¶¶3, 114.* This is based first on a total offense level of 38, which consists of: (1) a base offense level of 32; (2) a two-level enhancement for the presence of a firearm; (3) a two-level enhancement for the presence of a firearm; (5) a five-level enhancement under; and (3) a three-level reduction for acceptance of responsibility. *See PSR, ¶¶3, 35-46.* Next, the PSR determined that Mr. Dobbelmann accumulated seven criminal history points, which places him in criminal category IV. *Id., at ¶¶51-57.* The result is an advisory guidelines range set at between 324 to 365 months., *Id., at ¶¶ 3 and 114.*

**B.**   **Mr. Dobbelmann's Position on Sentencing Factors**.

Mr. Dobbelmann does not dispute the above calculation. Instead, and to the extent this Court considers the guidelines, Mr. Dobbelmann requests that it make a small departure because criminal history category IV overstates his criminal history.[1]

---

[1] While §4A1.3(b)(2) prohibit such a departure for "repeat and dangerous sex offenders," this prohibition has been effectively abolished by *United States v. Booker*, 543 U.S. 220 (2005) since the Guidelines are now advisory only.

2

When calculating the advisory guidelines range, a sentencing court may grant a downward departure in cases where the court concludes that a defendant's criminal history category over-represents the seriousness of his or her criminal history. *USSG §4A1.3(b)*; *United States v. Senior,* 935 F.2d 149, 150-51 (8th Cir. 1991).

Such a departure is warranted here. First, Mr. Dobbelmann's seven criminal history points just tip him into category IV. *PSR ¶57.* Second, all seven of his points come from offenses committed before June 2013, and five of these points arise from one scenario, a tumultuous, drug-fueled domestic dispute with his estranged wife. *Id at ¶¶52-54, see also ¶¶70-71.* Lastly, the only relation between his past offenses and the current charge is 2013 charge for failing to update his sex offender registry. *Id., ¶54.*

Mr. Dobbelmann's history is not of continuous, ongoing criminal activity that typifies a category IV defendant. As a result, the Court should utilize criminal history category III, which, with a total base offense level of 38, yields a guidelines range of between 235 to 293 months

## MOTION FOR DOWNWARD VARIANCE

Mr. Dobbelmann moves the Court for a downward variance to the mandatory minimum 15-year prison term. The grounds for his motion are: (1) the Court should decline to follow the production of child pornography guidelines on policy grounds because these guidelines set a range that is disproportionate to Mr. Dobbelmann's culpability; (2) the life-long collateral consequences Mr. Dobbelmann faces as a sex offender warrant the requested variance; (3) the section

3553(a) factors support a variance; and (4) Mr. Dobbelmann's "hard time" at Sherburne County Jail, exacerbated by the pandemic, further supports a downward variance.

**I.    THE COURT CAN AND SHOULD REJECT THE PRODUCTION GUIDELINES ON POLICY GROUNDS BECAUSE THEY PROVIDE FOR AN EXCESSIVE AND DISPROPORTIONATE SENTENCING RANGE IN MR. DOBBELMANN'S CASE.**

A Court need not follow the sentencing range suggested by the Guidelines if it disagrees with a relevant policy reflected in the Guidelines. *See Spears*, 555 U.S. at 264 (stating that "the point of Kimbrough" was to "recogni[ze] [the] district courts' authority to vary from the crack cocaine Guidelines based on policy disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case"). This authority to vary from the Guidelines "is at its greatest when the offense Guideline at issue is not the product of the Commission's empirical analysis and technical expertise." *United States v. Diaz*, No. 11–CR–821, 2013 WL 322243, at *3 (E.D.N.Y. Jan. 28, 2013).

The advisory guidelines for child pornography offenses, both production and non-production offenses, have been widely criticized as being based on politics rather than data or empirical research. [2] Many courts, including courts in

---

[2] The guidelines for production of child pornography offenses share the same flaws as guidelines for child pornography possession and distribution. *United States v. Jacob*, 631 F. Supp.2d 1099, 1115 (N.D. Iowa 2009) (rejecting § 2G2.1 on policy grounds because it has "some of the same flaws" as § 2G2.2); *United States v. Huffstatler*, 571 F.3d 620, 623 (7th Cir.2009) (noting § 2G2.1, like § 2G2.2, was not formulated on the basis of the empirical expertise of Sentencing Commission); *United States v. Price*, 775 F. 3d 826, 840 (7th Cir.

this district, agree that the guidelines in child pornography cases are owed less deference than guidelines for other offenses, because the guidelines for child pornography crimes are "largely the product of congressional directives, some of which the Sentencing Commission actively opposed, rather than Commission study and expertise." *United States v. Munoz,* 11-CR-1167, at page 8, ECF Doc. No. 107 (D. Minn. 2012), *quoting and citing United States v. Diaz,* 720 F. Supp. 2d 1039, 1042 (E.D. Wis. 2010) (footnote and other citations omitted); *see United States v. Jacob,* 631 F. Supp.2d 1099, 1115 (N.D. Iowa 2009) (rejecting § 2G2.1 on policy grounds because it has "some of the same flaws" as § 2G2.2). As a result of this flaw, the child pornography guidelines have less utility in formulating an appropriate sentence:

> Since the child pornography Guidelines do not fully describe the current sentencing practices of district courts or adequately differentiate between the least and worst offenders, courts cannot rely fully on the child pornography Guidelines to be a reliable assessment of a sentencing range that approximates the § 3553(a) factors in a typical child pornography case.

*United States v. McElheney,* 630 F. Supp. 2d 886, 901-02 (E.D. Tenn. 2009)

> Based on the history of the child pornography guidelines as the Commission has keyed them into policy and statutory mandates, the sentencing ranges of imprisonment are a less reliable appraisal of a fair sentence.

*United States v. Regan,* 627 F.3d 1348, 1353 (10th Cir. 2010).

This Court can decline to follow the child pornography production guidelines on policy grounds. It should do so in Mr. Dobbelmann's case because

---

2014) (holding the district court properly varied from the guidelines based on its policy disagreement with § 2G2.1.)

these guidelines treat Mr. Dobbelmann worse or the same as an offender engaged in much more serious conduct.

While any production of child pornography is a serious, Mr. Dobbelmann's offense conduct falls far short of that of most production defendants. In an October 2021 study, the United States Sentencing Commission found that the majority of production offenses, 80.9%, involved physical sexual contact. U.S. Sentencing Commission, *Federal Sentencing Of Child Pornography Production Offenses*, (October 2021) at pp. 35-36[3]; *see also United States v. R.V.*, 157 F.Supp.3d 207, 210 (E.D. N.Y. 2016) ("By definition, producers of child pornography are child molesters, frequently representing the worst and most dangerous type of offender.") Mr. Dobbelmann by contrast, did not have any physical contact, sexual or otherwise, with any minor victim. *See PSR ¶¶14-27*. Despite this key distinction, the advisory guidelines, essentially the statutory maximum, treat him the same as an offender who did sexually assault a victim. In the words of one court, this court should not "make [Mr. Dobbelmann] a surrogate for the monsters who prey on child victims through actual contact." *Quote from United States v. Grober*, 595 F.Supp.2d 382, 404 (D.N.J.2008), aff'd624 F.3d 592.)

Mr. Dobbelmann's offense conduct is even further distinguished by the fact that, unlike the majority of persons committing production offenses (60.3

---

[3]     Available    at    https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf    (last    accessed 7/12/22).

percent) [4], Mr. Dobbelmann did not prey on his own children or approach vulnerable minors from a  position of trust or power. Instead, Mr. Dobbelmann came into contact with his victims on public social media messaging services by sending literally thousands of over-the-top, sexually explicit messages and photos to anyone who would answer him, regardless of age. Unlike a minor preyed upon by a parent or a skillfully manipulative and trusted adult, Mr. Dobbelmann's absurdly explicit texts and messages readily identify him as a "pervert" and "dirty old man." Even more important, anyone receiving his messages, including the minor victims, had the ability to easily evade him by either blocking him or ignoring his messages. While Mr. Dobbelmann's conduct is still deplorable, he is far less culpable than a typical production defendant who assaults his victim and violates a sense of trust. *See United States v. R.V.*, 157 F.Supp.3d at 210 ("Prosecutions and sentencing should differentiate among offenders' varying degrees of culpability. Failure to distinguish among the multitude of vectors involved in a sentencing decision is particularly grave in the field of child pornography offenses.")

Another reason this Court should reject the production guidelines is that they significantly increase Mr. Dobbelmann's sentencing exposure for conduct that is already included in the offense. In *United States v. Price,* Eleventh Circuit affirmed a downward variance from 40 years to 18 years for a defendant convicted of child production offense. Noting that the district court properly varied from the

---

[4] Id at p. 30.

guidelines based on its policy disagreement with § 2G2.1, *Price* cited approvingly the district court's findings with respect to § 2G2.1, noting that by calling "for enhancements that apply in nearly every case," the guideline fails "to separate less dangerous offenders from those who are more dangerous." *United States v. Price*, 775 F. 3d at 840. Virtually every production case will involve the use of a computer and minor victim under age 16. *See United States v. Kelly*, 868 F.Supp.2d 1202, 1209 (D.N.M. 2012) ("[a]s widespread as computer use is now, enhancing for use of the computer is a little like penalizing speeding, but then adding an extra penalty if a car is involved"); *Letter from Anne Gannon, Nat'l Coordinator for Child Exploitation & Interdiction, to Judge Patti B. Saris*, p. 4 (Mar. 5, 2013) ("Because the vast majority of child pornography offenses now involve the use of a computer, this [specific offense characteristic] should be eliminated and replaced by others....")[5] In Mr. Dobbelmann's case, the two, two-level enhancements he has received (use of a computer and a victim between the ages of 12 and 16) have the effect of increasing the low end of his guidelines range by more than 10 years.[6]  *See PSR ¶37-38.*

In closing, the production guidelines essentially call for Mr. Dobbelmann to receive the statutory maximum 360-month prison sentence without regard to the fact that he never sexually assaulted a victim or exploited a close relationship with any minor. Accordingly, these guidelines do not provide for a fair sentence in Mr.

---

[5] Available at https://sentencing.typepad.com/files/doj-letter-to-ussc-on-cp-report.pdf (last accessed 7/13/22).
[6] Without these enhancements, Mr. Dobbelmann's total base offense level would be 34. This results in a guidelines range of between 188 to 235 months with criminal history category III and 210 to 262 months with criminal history category IV.

Dobbelmann's case and the Court should decline to follow them as a matter of policy.

## II.   THE COLLATERAL CONSEQUENCES MR. DOBBELMANN HAS AND WILL SUFFER SUPPORT A SIGNIFICANT DOWNWARD VARIANCE.

It is not surprising that sex offenders face collateral consequences far beyond what a typical federal defendant suffers:

> *To be adjudicated guilty necessarily results in denomination as a sex offender; automatically provided is a lifetime of continuous punishment — being marked as a pariah with severe restrictions on residence, movements, activities and associations. Adding unnecessary, unduly long, periods of incarceration is inappropriate and it should be avoided.*

*United States v. R.V.*, 157 F.Supp.3d at 210.

These collateral consequences start immediately. While in custody, Mr. Dobbelmann's confinement will be inordinately more difficult:

> *It is commonly noted that – regardless of jurisdiction – sex offenders are at the bottom of the prisoner hierarchy, living in near-constant fear of abuse and assault from prisoners and sometimes staff.*

*Living Among Sex Offenders, Identity, Safety and Relationships at Whatton Prison*, The Howard League for Penal Reform, p. 4 (Citations omitted.)[7] Mr. Dobbelmann has already experienced being shunned at the Sherburne County jail and his situation will not improve when he is designated to a federal prison:

> *[S]ex offenders are a distinct and disfavored category within prison populations, subject to heightened abuse from both corrections officers and fellow inmates. By many reports, sex offenders are themselves disproportionately likely to be the target of sexual assault in prison.*

---

[7]   Available at: https://howardleague.org/publications/living-among-sex-offenders/ (Last accessed 7/14/22).

Alice Ristroph, *Sexual Punishments*, 15 Colum. J. Gender & L. 139, 159-60 (2006) (footnotes omitted); James E. Robertson, *A Clean Heart and an Empty Head: The Supreme Court and Sexual Terrorism in Prison*, 81 N.C. L. Rev. 433, 461-62 (2003) (stating that "[s]ex offenders, especially those convicted of victimizing children, . . . represent an anathema in inmate subculture" where "norms call for their savage beating") (footnotes omitted); Emily Horowitz, *Growing Media and Legal Attention to Sex Offenders: More Safety or More Injustice?* 2007 J. Inst. Just. Int'l Stud. 143, 155-56 (2007) ("Sex offenders are aware that being a murderer is a much less threatening and offensive crime among prison populations.)

    After his release, Mr. Dobbelmann will continue to face collateral consequences. Along with facing a lifetime of supervised release, he must also, under Minnesota law, register as a sex offender for his entire life. *See Minn. Stat. §§ 244.052, 243.166*. On top of, or perhaps because of these strictures, released sex offenders are severely limited in where and with whom they can live, work, and recreate, for the rest of their lives. *See 42 U.S.C. §§16911, 16915(a)(1), 16915(b)*, *see also* Michael Schwirtz, *In 2 Trailers, the Neighbors Nobody Wants*, N.Y. Times, Feb. 5, 2013, at A1[8] (discussing the lack of permissible, housing for "sex offenders.") In the words of one former sex-offender who served his sentence:

> *A murderer can live wherever he wants. A shooter, a robber can live wherever he wants . . . I have to live in a trailer.*

---

[8] Available at https://www.nytimes.com/2013/02/05/nyregion/suffolk-county-still-struggling-to-house-sex-offenders.html?pagewanted=all&_r=0 (Last accessed 7/12/22).

*Id. See also Model Penal Code: Sexual Assault and Related Offenses*, General Commentary at 12 (Am. Law. Inst., Discussion Draft No. 2, 2015) ("[T]he treatment of sex offenders has borne many of the hallmarks of an unjustifiably punitive state. For instance, sex offenders as a class have been subjected to some of the most unforgiving and indiscriminate collateral consequences of conviction, such as unduly severe residency restrictions or registration requirements.").

A still further collateral consequence that Mr. Dobbelmann will likely suffer is estrangement from his three children. *See PSR¶¶70-71*. It is not unusual for defendants to "have a difficult time reestablishing their relationships with their children" upon release from prison. *See* Jenni Vainik, *The Reproductive and Parental Rights of Incarcerated Mothers*, 46 Fam. Ct. Rev. 670, 680 (2008) (footnote omitted); see also *United States v. G.L.*, 305 F.R.D. 47, 50 (E.D.N.Y.2015). Reconnecting with family and loved ones is particularly hard for convicted sex offenders, however, because of the stigma associated with the offense as well as the strict restrictions imposed upon release. *See 42 U.S.C. § 16913* (federal sex offender registration and notification requirements); *18 U.S.C. § 3583(k)* (supervised release term for federal sex offenders); *Lawrence v. Texas*, 539 U.S. 558, 575, (2003) (recognizing that the "stigma" imposed for violation of sex crime statute "is not trivial.")

In short, a prison sentence of 15 years, when combined with the unavoidable collateral consequences Mr. Dobbelmann will experience as a sex offender, is a severe and sufficient punishment for his offense.

III.   **THE 3553(a) FACTORS SUPPORT A DOWNWARD VARIANCE TO A SENTENCE OF 15 YEARS.**

The last step of the sentencing process is for the district court to consider the §3553(a) factors to determine whether they support the sentence requested by a party. *Gall v. United States*, 552 U.S. 38, 49-50 (2007). As set forth below, the pertinent section 3553(a) factors further support the requested variance.

A.   <u>History and Characteristics of The Defendant and Nature and Circumstance of the Offense.</u>

1.   **History and Characteristics of the Defendant.**

Mr. Dobbelmann offers no excuses for his offense conduct. His childhood was positive, if not isolated and sheltered. PSR ¶. Mr. Dobbelmann does believe that his use of, and subsequent addiction to, Methamphetamine fueled his hyper-sexual conduct and impaired his judgment to a certain degree. He has sought and received counseling at the Sherburne County Jail and will continue to seek more intense drug treatment while in prison. *See Defendant's Exhibits 1 and 2.*

2.   **Nature and Circumstances of the Offense.**

As acknowledged above, Mr. Dobbelmann's offense is serious. Even if the Court is lenient, he will be severely punished for his actions. What must not be lost in the disgust over his behavior is the fact that Mr. Dobbelmann is less culpable than the typical defendant charged with production of child pornography. As set forth above, Mr. Dobbelmann did not have direct physical contact with his victims and never sexually assaulted anyone. While there are messages that indicate he spoke and wrote about intending to meet one or more minor victims, he never

followed through and it seems clear that he had no intent to do so. Nor did Mr. Dobbelmann approach his victims from a position of trust and/or authority. Instead, Mr. Dobbelmann's approach was explicitly blunt and direct. *See PSR ¶¶15-25*. While this conduct does him no credit, it certainly places him outside production offenders who sexually assault and manipulate their victims.

**B.    Purposes of Sentencing/Need for the Sentence Imposed**.

**1.    Need For Deterrence.**

Mr. Dobbelmann's requested variance advances the idea of "marginal deterrence, i.e., that "punishing two crimes of different gravity the same is unsound when to do so would encourage additional crimes." Tracey L. Meares, Neal Katyal Dan M. Kahan, *Updating the Study of Punishment,* 56 *Stan. L. Rev.* 1171, 1172-80 (2004).

> *Those who think that the idea of marginal deterrence should play some part in criminal sentences — that is, that the harshest sentences should be reserved for the most culpable behavior — might find little room left above Newsom's sentence for the child abuser who physically harms his victim, who abuses many different children, or who in other ways inflicts greater harm on his victims and society.*

*United States v. Newsom*, 402 F.3d 780, 785-86 (7th Cir. 2005); *see also United States v. Kirkpatrick*, 589 F.3d 414, 416 (7th Cir. 2009) ("[L]eaping close to the statutory maximum creates a risk of unwarranted disparity with how similar offenders fare elsewhere—not only because it may overpunish [a defendant], but because it leaves little room for the marginal deterrence of persons whose additional deeds are more serious . . . .") (citations omitted)

The requested variance also furthers general deterrence, because a 15-year federal prison sentence, and the life-long collateral consequences of being a convicted sex offender, serve as an extremely strong deterrent both to Mr. Dobbelmann in the future and the public at large.

2. **Protection of the Public From Further Crimes of the Defendant.**

Mr. Dobbelmann submits that the danger to the public is less with a 15-year sentence because such a sentence provides ample opportunity for the treatment, therapy, and reflection that Mr. Dobbelmann will need to rehabilitate himself, while at the same time providing him with an incentive to rehabilitate himself:

> There needs to be a light at the end of the tunnel for each of these patients who cooperate, accept, acknowledge and show their willingness to work with the system to correct their behaviors as such so that they are no longer a substantial threat to society....

*Matter of Application of New York v. Douglas S.*, 2008-002297 (N.Y.Sup.Ct. 5th Jud. Dist.2009) (An administrative case where the judge was analyzing the cases of 145 sex offenders.)  Clearly, a sentence which provides opportunity for treatment and rehabilitation, along with a glimmer of hope, protects the public better than a sentence that incarcerates Mr. Dobbelmann until he is elderly.

Lastly, Mr. Dobbelmann will be middle-aged when released from prison. It is generally agreed that recidivism decreases with age, thereby reducing the need to impose prison sentences to serve as deterrence.  *See United States v. Lucania*, 379 F.Supp.2d 288, 297 (E.D.N.Y. 2005) ("Post-*Booker* courts have noted that recidivism is markedly lower for older defendants"); *United States. v. Carter*, 538 F.3d 784 (7

14

Cir. 2008) (affirming 24-month sentence for money laundering based partly on finding that defendant, at age 61, posed a lower recidivism risk).

      **3.     To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.**

The requested variance, a 15-year prison sentence that will incarcerate Mr. Dobbelmann till his late middle-age, satisfies all of these purposes.

## IV.    MR. DOBBELMANN'S HARD TIME AT SHERBURNE COUNTY DURING THE PANDEMIC SUPPORTS THE REQUESTED VARIANCE.

As this Court is aware, defendants who are detained at the Sherburne County Jail while awaiting sentencing frequently request "hard time" credit, citing the conditions at a facility that is not meant for long term pretrial detention. Mr. Dobbelmann's time in pretrial custody, served during the COVID pandemic, has been extremely difficult and he has spent a significant amount of his sentence locked in his cell. Any downward variance the Court makes should include additional credit, both for the time he has already served during the pandemic, and for his future time in custody that will likely be served under some sort of COVID restrictions.

<u>**DESIGNATION REQUEST**</u>

Mr. Dobbelmann respectfully requests that this Court recommend that he be incarcerated in the federal facility at Sandstone, Minnesota, or in another facility in Minnesota or as close to Minnesota as possible.

Dated: July 14, 2022.

**JOHNSON & GREENBERG, PLLP**

s/Lee R. Johnson_____
Lee R. Johnson #189935
5775 Wayzata Boulevard
Suite 700
St. Louis Park, MN 55416
(952) 545-1621

Attorney for Defendant
Nathan Miller Dobbelmann